IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:23-CV-00324

| | |
|---|---|
| BRYAN J. JOHNS, individually and on behalf of the Morris & Associates, Inc. Employee Stock Ownership Plan,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM F. MORRIS III, DORIS MORRIS, RANDY CLAPSADL, ROBERT F. WARWICK, BRUCE BOWERS, JOHN KIMBER, NED LEARY, ED LEONARD, JOHN SHELL and MORRIS & ASSOCIATES, INC., a North Carolina Corporation,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS** |

Defendants, by and through their undersigned counsel, respectfully submit this Memorandum in Support of their Partial Motion to Dismiss.

**INTRODUCTION**

Plaintiff, a terminated employee of Morris & Associates, Inc. ("Morris Inc."), instituted this action concerning the operation of the Morris & Associates, Inc. Employee Stock Ownership Plan (the "Plan" or "ESOP") both individually and in his capacity as one of the trustees of the Plan. In his Complaint he challenged the manner in which the Plan has operated and also claims that his termination as an employee was an improper retaliation for his raising issues about the Plan.

At the same time he filed the action, he sought a temporary restraining order to prohibit the Morris Inc. Board of Directors from removing him as a Plan trustee. After this Court denied that motion, Plaintiff was removed as trustee, thereby, as more fully explained below, undoing his right

to proceed in a representative capacity as a Plan fiduciary. Plaintiff also fails to meet the strict criteria for asserting a retaliation claim under ERISA.

For those reasons, as more fully explained below, Defendants seek to dismiss Plaintiff's claims to the extent that those claims purport to proceed in a representative capacity, and also seek to dismiss Plaintiff's retaliation claim.

## STATEMENT OF FACTS

### A. Procedural Background.

Plaintiff, purporting to act both "individually and on behalf of the Morris & Associates, Inc. Employee Stock Ownership Plan" (Complaint, Doc. 1 ("Cplt."), at p. 1), filed this action on June 16, 2023, against Morris Inc., its Board of Directors (William Morris, and Messrs. Bowers, Kimber, Leary, Leonard and Shell (collectively the "Board"), and three of the trustees (the "Trustee Defendants") of the Plan.

Count I asserted a claim for "Breaches of Fiduciary Duty Under 29 U.S.C. § 1104(a)(1) Against the Trustee Defendants and Morris Inc. for Causing and Allowing Inaccurate Valuations." (Cplt. ¶¶ 117-127.) Count II asserted a claim for "Breaches of Fiduciary Duty Under 29 U.S.C. § 1104(a)(1) Against the Trustee Defendants and Morris Inc. for Allowing Use of Corporate Assets for Personal Benefit and Excessive Compensation." (Cplt. ¶¶ 128-135.) Count III asserted a claim for "Breaches of Fiduciary Duty Under 29 U.S.C. § 1104(a)(1) Against the Trustee Defendants and Morris Inc. for Managing the ESOP and the Company for the Benefit of [William Morris] and his Family at the Expense of the ESOP and its Participants." (Cplt. ¶¶ 136-146.) Finally, Count IV asserted a retaliation claim under the Employee Retirement Income Security Act (ERISA) claiming "Interference with Protected Rights in Violation of 29 U.S.C. §1140 Against [William Morris], Morris Inc. and the Board of Directors." (Cplt. ¶¶ 147-154.)

2

Contemporaneously with the filing of the Complaint, Plaintiff filed a Motion for Temporary Restraining Order seeking to enjoin the Morris Inc. Board from terminating him as a Plan trustee. (Doc. 4.)

B.  **Factual Allegations**

Plaintiff alleges that he "was employed by Morris Inc. from August 2007 to his discharge on or about April 24, 2023." (Cplt. ¶ 14.) He was, he alleges, "the Company's President for approximately ten years, and was most recently the Company's Chief Operating Officer (COO)." (*Id*.) He also alleges he "is and was a Trustee to the ESOP from 2008 to present (*id*. at ¶ 10), as well as a vested "participant" in the Plan. (*Id*. at ¶ 13.)

Although Plaintiff concedes that the Company's CEO "had the power throughout the Relevant Period to hire and fire Plaintiff" and that the Company's "Board has the power to remove and to appoint ESOP Trustees" (Cplt. ¶ 53), he contends that "[f]or his efforts," as one of the Plan Trustees, he "was discharged from his position as Chief Operating Officer (COO) at Morris, Inc. by [William Morris III] and the Company." (*Id*. at ¶ 4; *see also id*. at ¶ 57 ("[o]n or about April 24, 2023, [William Morris III] informed [Plaintiff] that he was terminated from employment with Morris Inc.").) Around the same time, the "Board of Morris, Inc. voted to remove Plaintiff as a member of the ESOP Committee effective July, 2023," (*id*. at ¶ 114), when he received notification that "the Board removed him from the ESOP Administrative Committee, by Written Consent dated May 3, 2023, to take effect 60 days after his receipt of notice." (*Id*. at ¶ 61.)

Plaintiff alleges that he was terminated because, "in his capacity as Trustee for the ESOP, he repeatedly raised concerns about the annual valuations of the ESOP's Morris Inc. stock and the administration of the ESOP." (Cplt. ¶ 58.) He further alleges that he was terminated "because [Plaintiff] was seeking to protect the interests of the ESOP and its participants." (*Id*.) Nowhere,

3

however, does Plaintiff allege that he was discharged for giving information or testifying in any inquiry or proceeding relating to [ERISA]." 29 U.S.C. § 1140.

### C. Developments Subsequent to Filing

On June 23, 2023, the Court conducted a hearing on Plaintiff's Motion for a Temporary Restraining Order which sought to enjoin the Morris Inc. Board of Directors from removing Plaintiff as a Trustee. (Doc. 4.) The Court denied Plaintiff's Motion in open court and, on that same day, issued a written Order denying Plaintiff's TRO motion. (Doc. 17.)

Thereafter, effective July 3, 2023, the Board of Directors of Morris Inc. adopted a Written Consent of the Directors of Morris & Associates, Inc. to Action Without Meeting which removed Plaintiff as a trustee of the Morris & Associates, Inc. Employee Stock Ownership Plan as of that date. (*See* Partial Motion to Dismiss, Ex. A.) Thus, since that date, Plaintiff has no longer served in any official capacity with respect to the Plan.

## ARGUMENT

### I. The Standards Under Rules 12(b)(1) and 12(b)(6).

Under the standards of Rule 12(b)(1), the "plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In the words of the Supreme Court, "[a]s the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [he has] standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). In addition, a plaintiff "must maintain [his] personal interest in the dispute at all stages of litigation," *id*. at 2208 (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008), and "must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Standing, moreover, in the words of the *TransUnion* Court, "is not dispensed in

4

Case 5:23-cv-00324-D-RJ   Document 30   Filed 08/21/23   Page 4 of 10

gross; rather, plaintiff[] must demonstrate standing for each claim that [he] press[es] and for each form of relief that [he] seek[s]." *Id.*

Further, "[w]hen a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991)).

With respect to a Rule 12(b)(6) motion, as this Court is well-aware, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). But "[t]o survive a Rule 12(b)(6) motion, '[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Clark v. Md. Dept. of Publ. Safety and Corr. Serv.*, No. 08-7918, 2009 WL 646247, at *2 (4th Cir. Mar. 13, 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I. **Plaintiff Lacks Standing to Bring a Representative Claim as a Trustee on Behalf of the Plan.**

As noted above, Plaintiff purports to bring his claims in both his individual and representative capacities, based on his status at the time of filing as a trustee of the Plan. Yet, as noted above, after denial of his TRO motion, Plaintiff was removed from that role by the Board of Directors of Morris Inc.

As a former trustee, Plaintiff lacks standing to proceed in a representative capacity. The statute under which Plaintiff seeks to proceed with regard to his first three claims for relief – namely, 29 U.S.C. § 1132(a) – names only three classes of persons who can sue: a participant or beneficiary, the Secretary of Labor, and a fiduciary. *See Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991). Because Plaintiff no longer serves in the fiduciary capacity of trustee, he lacks standing to proceed in that capacity.

Indeed, Plaintiff identified this very issue in seeking the TRO, contending that his removal as a trustee "will deprive the Plan participants of having their rights prosecuted by a sitting Trustee." (Doc. No. 5 at 13 (citing *Chemung Canal Trust*).) Plaintiff, in fact, quoted from that Second Circuit decision, "noting that '[t]here is no indication of any legislative intent to grant a former fiduciary a continuing right to sue on behalf of the plan.'" (*Id.*, quoting *Chemung Canal Trust*, 939 F.2d at 14 (brackets in original).) Thus, the court in *Chemung Canal Trust* held the list in 29 U.S.C. § 1132(a) – participants, beneficiaries, fiduciaries, and the Secretary of Labor – "should be viewed as exclusive." 939 F.2d at 14. As Judge Weinstein, following *Chemung Canal Trust*, later put it, "[a]s a *former* fiduciary of the Plan, [plaintiff] lacks *current* standing to assert a claim under ERISA." *H&R Convention and Catering Corp. v. Somerstein*, No. 12-CV-1425, 2013 WL 1911335, at *7 (E.D.N.Y. May 8, 2013) (emphasis in original, citing *Chemung Canal Trust*, 939 F.2d at 14-15).

More recently, the Seventh Circuit, in adopting the position that "section 1132(a) authorizes only *current* fiduciaries – not former – to bring suit," noted that "[t]hree circuits have addressed this question and all agree" on that issue. *Trujillo v. Am. Bar Ass'n*, 706 Fed. App'x

6

868, 870 (7th Cir. 2017) (citing *Chemung Canal Trust*; *Corbin v. Blankenburg*, 39 F.3d 650, 652-53 (6th Cir. 1994); and *Blackmar v. Lichtenstein*, 603 F.2d 1306, 1310 (8th Cir. 1979).[1]

Plaintiff, therefore, lacks standing to pursue any representative claims based on his former capacity as a Plan Trustee.[2]

## II. Plaintiff has Failed to State an Anti-Retaliation Claim.

In Count IV (Cplt. ¶¶ 147-154), Johns purports to state a claim for "Interference with Protected Rights in Violation of 29 U.S.C. § 1140." Relying on the interplay between ERISA § 510, 29 U.S.C. § 1140 – sometimes referred to as ERISA's "anti-retaliation or 'whistleblower' provision," *Edwards v. A.H. Cornell and Son, Inc.*, 610 F.3d 217, 220 (3d Cir. 2010) – and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which allows plan participants, beneficiaries, and fiduciaries to bring civil actions, Johns claims that Mr. Morris and the Company "unlawfully and intentionally discriminated and discharged Plaintiff for exercising his rights and responsibilities to protect the Plan, the ESOP Trust and Plan participants." (Cplt. ¶ 150.) Specifically, Plaintiff alleges that Mr. Morris "terminated [Plaintiff] because [Plaintiff], in his capacity as Trustee for the ESOP, repeatedly raised concerns about the annual valuations of the ESOP's Morris Inc. stock and administration of the ESOP." (*Id.* at ¶ 58.)

---

[1] The court in *Trujillo* noted that two circuits, including the Fourth Circuit, "without discussion have assumed that former fiduciaries may sue under section 1132(a)(3) to redress retaliation in violation of section 1140." 760 Fed. App'x at 870 (citing *Trujillo v. Landmark Media Enters., LLC*, 689 Fed. App'x 176, 178-79 (4th Cir. 2017)). That is not an issue here since Defendants do not challenge Plaintiff's standing to assert a retaliation claim but instead contend that he has failed to state a claim for which relief can be granted with respect to retaliation. (*See* § II, *infra*.)

[2] While Defendants do not contest at this stage, Plaintiffs' standing to proceed in his capacity as a Plan participant, his limitation in that role may well have implications for the scope of discovery and for further motion practice in this case.

7

Section 510 of ERISA, 29 U.S.C.§ 1140, provides in pertinent part that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan," or because a person "has given information or has testified or is about to testify in any inquiry or proceeding relating to [ERISA]."[3]

Plaintiff cannot state a claim under this provision. With regard to the first prong, Plaintiff cannot contend that he was terminated for bringing this action since his termination occurred on April 24, 2023 (Cplt. ¶ 57), nearly two months prior to the date on which he instituted this action, June 16, 2023. With regard to the second prong, Plaintiff does not allege that he "has given information or has testified or is about to testify in any inquiry or proceeding relating to [ERISA]," as required by the statute. *See* 29 U.S.C. § 1140.

The Court of Appeals for the Fourth Circuit, moreover, has narrowly circumscribed that anti-retaliation provision. *See King v. Marriott International, Inc.*, 337 F.3d 421 (4th Cir. 2003). In *King*, the plaintiff was a long-time benefits department employee who repeatedly disagreed with her superior's decisions to transfer funds from the company's medical plan to its general corporate reserves fund because she believed the transaction violated ERISA. *Id.* at 423. King registered her objections with her supervisor, as well as with two in-house attorneys, and actually requested an opinion letter from one of the in-house attorneys. *Id.* After King voiced her objection a second time, she was discharged for purported personality conflicts within the benefits department. *Id.*

---

[3] ERISA § 510 also offers protection to employees sought to be discharged in order to deprive them from accruing benefits or additional benefits. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 238 (4th Cir. 1991). Plaintiff is not proceeding under that prong of §510 which requires proof of "specific intent to interfere with an employee's pension rights." *Id*. at 239. Rather he is proceeding on a "whistleblower" theory contending that his discharge related to his complaints about Plan issues.

King filed a whistleblower claim alleging that she was discharged in retaliation for complaining to her supervisor, counsel, and other corporate officers about the unlawful transfer of corporate assets under ERISA. *Id.* at 427.

In analyzing whether the plaintiff's claim was an ERISA claim, the court considered the meaning of the terms ""testified or is about to testify" and "inquiry or proceeding" in the statute. The Fourth Circuit held:

> In the instant case, as well, the use of the phrase "testified or is about to testify" does suggest that the phrase "inquiries or proceedings" referenced in section 510 is limited to the legal or administrative, or at least to something more formal than written or oral complaints made to a supervisor.

337 F.3d at 427. The court further held that the "phrase 'given information' does no more than insure that even the provision of non-testimonial information (such as incriminating documents) in an inquiry or proceeding would be covered." *Id*. In so ruling, the Court held that "the anti-retaliation provision in section 510 is much narrower than the equivalent provisions in such statutes as Title VII of the Civil Rights Act of 1964, indicating a much more circumscribed remedy." *Id*. (internal quotation omitted). In this Circuit, therefore, an employee allegedly terminated for making internal complaints has no ERISA retaliation claim.

The Fourth Circuit's decision in *King* remains a seminal case on the issue. Thus, for example, in *Sexton v. Panel Processing, Inc.*, 54 F.3d 322 (6th Cir. 2014), the Sixth Circuit, relying on *King*, ruled that § 1140 of ERISA "does not contain a clause protecting people who oppose, report or complain about unlawful practices" outside of "inquiries or proceedings." *Id*. In that case, a later-terminated employee communicated concerns about an ERISA violation to the board chair of the defendant company. *Id*. at 334. The court endorsed *King's* "plain reading of th[e] provision's terms" that "'the most compelling interpretation of the statutory language' excludes workplace complaints." *Id*. at 341 (quoting *King*, 347 F.3d at 428); *see also Edwards*, 610 F.3d at

225-26 ("we agree with the Fourth Circuit's decision in *King* that unsolicited internal complaints are not protected under Section 510 of ERISA, 29 U.S.C. § 1140, based on a plain reading of that provision's terms."). Other district courts within this Circuit have also "reiterated its narrow interpretation of the subject language in the case of *King*." *Ceillitto v. Semfed Mgmt., Inc.*, No. RDB-056-1794, 2007 WL 1725442, at *4 (D. Md. Jun. 12, 2007). More recently, in *Paasch v. Nat'l Rural Elec. Coop. Ass'n*, 177 F. Supp. 3d 930, 941 (E.D. Va. 2016), the court ruled that internal complaints made to a supervisor and director were deemed not to "to meet the reporting requirements under ERISA's retaliation provision."

Here, because Plaintiffs' allegations – like those of the plaintiffs in *King* and its progeny – were, if they were made at all, entirely internal and did not concern any formal "inquiry or proceeding," Plaintiff has failed to state an ERISA retaliation claim.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that their Partial Motion to Dismiss be granted and that Plaintiff's representative claims be dismissed, along with his retaliation claim under 29 U.S.C. § 1140.

This the 21st day of August, 2023.

/s/ Pressly M. Millen
Pressly M. Millen
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville St., Suite 1100
Raleigh, North Carolina 27601
(919) 755-2135
press.millen@wbd-us.com

*Counsel for Defendants*