| | |
|---|---|
| BRYAN J. JOHNS, individually and on behalf of the Morris & Associates, Inc. Employee Stock Ownership Plan,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM F. MORRIS III, DORIS MORRIS, RANDY CLAPSADL, ROBERT F. WARWICK, BRUCE BOWERS, JOHN KIMBER, NED LEARY, ED LEONARD, JOHN SHELL and MORRIS & ASSOCIATES, INC., a North Carolina Corporation,<br><br>Defendants. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS** |

Defendants' opening Memorandum in Support of their Partial Motion to Dismiss set out two straightforward propositions. First, Plaintiff, as a *former* trustee of the Morris & Associates, Inc. ("Morris Inc.") Employee Stock Ownership Plan (the "Plan"), no longer had standing to proceed in that role but could only proceed individually against Defendants and not, as he was purporting to do, on behalf of the Plan. Second, Plaintiff, who did not allege that he had "given information or ha[d] testified or is about to testify in any inquiry or proceeding relating to [ERISA]," 29 U.S.C. § 1140, could not state an anti-retaliation claim in light of the Fourth Circuit's on-point precedent in *King v. Marriott International, Inc.*, 337 F.3d 421, 427 (4th Cir. 2003).

Plaintiff's Opposition, as more fully described below, seeks to ignore the pertinent precedent cited by Defendants by bending and extending other ERISA authorities – in some instances authorities explicitly rejected by the Fourth Circuit – well beyond their holdings.

**ARGUMENT**

**I.**      **Plaintiff Lacks Standing to Bring a Representative Claim as a Trustee on Behalf of the Plan.**

On the day this action was filed, Plaintiff filed a Motion for Temporary Restraining supported by a Memorandum in which he stated to the Court precisely the position taken by Defendants in their Partial Motion to Dismiss, claiming that Plaintiff's potential removal as a Plan trustee – the action Plaintiff was seeking to restrain – would "deprive the Plan participants of having their rights prosecuted by a sitting Trustee." (Mem. in Supp. of Pls. Mot. for TRO, Dkt. 5, at 13.) As support for that proposition, Plaintiff cited the Second Circuit's decision in *Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991), citing that case's holding that "[t]here is no indication of any legislative intent to grant a former fiduciary a continuing right to sue on behalf of the plan." (*Id*.)

Having made that clear statement to the Court at the outset of the case, Plaintiff now seeks to disclaim it based on a hodge-podge of reasons (Opp. at 4-7), but never seeking to distinguish *Chemung Canal Trust* (or even mentioning that earlier authority it relied on when seeking a TRO).

Plaintiff first contends that the Fourth Circuit "has allowed former fiduciaries to bring ERISA claims" (Opp. at 4), citing the court's unpublished *per curiam* decision in *Trujillo v. Landmark Media Enterprises, LLC*, 689 Fed. App's 176 (4th Cir. 2017). That case, however, did not concern a former trustee purporting to act on behalf of the Plan, but rather a straightforward ERISA retaliation claim brought by the plaintiff in his individual capacity. *Id*. at 178 ("Trujillo filed a complaint in the district court alleging that he was terminated in retaliation for giving

2

information regarding ERISA violations"). The case provides no support for a former trustee proceeding in a representative capacity.[1]

Next, Plaintiff seeks to distinguish just one of Defendants' multiple authorities – *H&R Convention and Catering Corp. v. Somerstein*, No. 12-CV-1425, 2013 WL 1911335, at *7 (E.D.N.Y. May 8, 2013) – which followed *Chemung Canal Trust* in holding that former fiduciaries lack current standing. (Opp. at 4.) In doing so, Plaintiff relies on *L.I. Head Start Dev. Services, Inc. v. EEOC of Nassau Co.*, 710 F.3d 57, 66 (2d Cir. 2013). (Opp. at 4.) That case, however, concerned an anomalous circumstance in which a former trustee, having earlier attained a judgment against a Plan, brought a subsequent action against the Plan for "failing to ensure that [the plan] had sufficient assets with which to satisfy the judgment." 710 F.3d at 61. For that reason, as the court put it, plaintiff "had a continuing interest in protecting the Plan assets, which consisted in part of the funds [plaintiff] had contributed to the Plan during its participation." *Id*. at 66. That circumstance is not present in a case like this one where a former fiduciary seeks to continue acting in his former capacity despite removal. The proposition that Plaintiff cannot do so has been affirmed in the Sixth and Eighth Circuits, *Corbin v. Blankenburg*, 39 F.3d 650, 652-53 (6th Cir. 1994); *Blackmar v. Lichtenstein*, 603 F.2d 1306, 1310 (8th Cir. 1979), as well as the Second Circuit in *Chemung Canal Trust*.[2]

Plaintiff also contends that the Seventh Circuit indicated in *Trujillo v. Amer. Bar. Ass'n*, 706 Fed. App'x 868 (7th Cir. 2017), that the plaintiff in that case might have been able to proceed

---

[1] Plaintiff's additional reliance on *Clancy v. United Healthcare Ins. Co.*, 643 F.Supp.3d 589 (E.D. Va. 2022) (*see* Opp. at 4), is misplaced since that case concerned the status of a liquidating trustee as a successor fiduciary in a terminated plan, a circumstance not present here.

[2] Plaintiff's citation to the Ninth's Circuit decision in *Hashimoto v. Bank of Haw.*, 999 F.2d 408, 411 (9th Cir. 1993) (Opp. at 4), is particularly inapt since that case concerned only a retaliation claim, *id*. at 409, and its reasoning was explicitly rejected by the Fourth Circuit in *King*, 337 F.3d at 428 (*see* p. 7, *infra*).

as a former fiduciary if his lawsuit had been brought in the interests of the Plan. (Opp. at 5.) Plaintiff, however, fails to grapple with the fact that the relief sought by the plaintiff in *Trujillo* that the court found disqualifying to his statutory standing – *e.g.*, his requests "for reinstatement to his position" and "back pay or other equitable relief that will make *him* whole," 706 Fed. App'x at 870 – are also sought by Plaintiff here. (*See* Cplt. at p. 39 ("[t]hat the Court order Plaintiff's reinstatement as COO at Morris Inc. [and] equitable relief making him whole for lost wages.") Plaintiff's efforts to distinguish *Corbin*, *supra*, are similarly unavailing. In that case, the court ruled that while a former trustee ceased to be a real party in interest upon loss of that position, the case itself would not abate providing "a successor fiduciary steps into the shoes of a predecessor." 39 F.3d at 654. Here, of course, it is Plaintiff rather than a successor fiduciary who seeks to maintain the action despite his loss of statutory standing.[3]

Plaintiff's argument that ERISA's standing applies to former participants and therefore should also apply to former trustees is not supported by any of its authorities. Thus, for example, in *In re Mut. Funds Invest. Litig.*, 529 F.3d 207 (4th Cir. 2008) (cited by Plaintiff at Opp. 6), the court found standing for a cashed-out plan participant so long as he "colorably claims that under the plan and ERISA he was entitled to more than he received on the day he cashed out." *Id*. at 215 (quoting *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 300 (3d Cir. 2007)). That reasoning,

---

[3] Plaintiff's reliance on *Healey v. Abadie*, 143 F.Supp.3d 397 (E.D. Va. 2015 (incorrectly cited by Plaintiff (Opp. at 5)), also concerned a situation not present here, namely, an action by an actual serving trustee, *id*. at 401, who met the statutory criteria of being "*a* fiduciary" notwithstanding defendant's contention that he did not represent the majority of all trustees. *Id*. at 402. That holding has no bearing on the issue of the standing of a former trustee, nor do Plaintiff's authorities concerning former trustees in the context of terminated plans. (*See* Opp. at 6.) Indeed, *Horn v. McQueen*, 353 F.Supp.2d 785, 801 (W.D. Ky. 2004), concerned an action not by a former trustee, but instead plaintiffs "as participants in the ESOP." *Clancy*, as described *supra* at n.1, was brought by a liquidating trustee. Similarly, *Oak Point Partners, LLC v. Blue Cross Blue Shield of Mich.*, 446 F.Supp.3d 195, 199 (E.D. Mich. 2020), concerned the non-analogous circumstance of a successor who acquired causes of action out of a bankruptcy.

however, has no bearing on the standing of a former trustee who has been relieved of his duties. Also lacking in any reasoned rationale is Plaintiff's contention (Opp. at 7), that his theoretical liability for prior breaches of fiduciary duty somehow creates standing for him as a former trustee to proceed against the Plan in a representative capacity. The authorities cited by Plaintiff simply provide no support for that proposition which both departs from the clear statutory language specifically identifying those persons with capacity to proceed and the Supreme Court's general admonitions regarding efforts to create standing from hypothetical speculations. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (parties cannot "manufacture standing. . . based on their fears of hypothetical future harm that is not certainly impending.").

Finally, Plaintiff's argument that the general remedial "purpose of ERISA" should trump the actual language of the statute conferring standing is misplaced and not supported by his sole authority, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (Opp. at 7). In that case, the Supreme Court refused to infer a private remedy not found in the explicit language of ERISA § 409(a), 29 U.S.C. § 1109(a). 473 U.S. at 140-41. That case does not support that contention that courts should simply infer an additional term – "former" – into the statutory language of ERISA.

In summary, Plaintiff, as a former trustee, should not be permitted to proceed in a representative capacity that he no longer holds in light of the clear statutory language found in 29 U.S.C. § 1132(a) which does not identify former trustees as within the class of persons who may bring actions under ERISA.

## II.     Plaintiff has Failed to State an Anti-Retaliation Claim.

In their opening Memorandum (at 7-10), Defendants – citing the Fourth Circuit's seminal case, *King v. Marriott International, Inc.*, 337 F.3d 421 (4th Cir. 2003) – argued that Plaintiff could not state an ERISA retaliation claim under 29 U.S.C. § 1140, because Plaintiff had not alleged

5

either of the two statutory prerequisites, namely, that (i) he had "given information or has testified or is about to testify in any inquiry or proceeding relating to [ERISA]," or (ii) was "discharge[d] . . . for exercising any right to which he is entitled under the provisions of an employee benefit plan."

With regard to the first prong, Defendants contended that under the Fourth Circuit's narrow circumscribing of ERISA's anti-retaliation provision in *King v. Marriott International, Inc.*, 337 F.3d 421 (4th Cir. 2003), the phraseology of the statute's "testified or is about to testify" requires "something more formal than written or oral complaints made to a supervisor." *Id*. at 427. (Op. Mem. at 9-10.) Thus, Plaintiff's allegation that he was terminated because he "repeatedly raised concerns about the annual valuations" (Cplt. ¶ 58), could not meet the Fourth Circuit's exacting standard.

As to the second prong of § 510, Defendants' opening Memorandum described that that prong offered protection to employees discharged in order to deprive them from accruing benefits or additional benefits. (Op. Mem. at 8, n.3 (citing *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 238 (4th Cir. 1991).) Plaintiff, however, is not proceeding under that prong of § 510 which requires proof of "specific intent to interfere with an employee's pension rights," *id*. at 239, but instead proceeding on a "whistleblower" theory contending that his discharge related to his complaints about Plan issues. (*See* Op. Mem. at 8.)

In his Opposition (at 10), Plaintiff attempts to claim that his actions fall within the ambit of the statute by claiming that an "ERISA-protected activity is protesting a legal violation in connection with an ERISA-governed plan." (*Id*.) In support of that proposition, Plaintiffs cites (and quotes) the Ninth Circuit's decision in *Acosta v. Brain*, 910 F.3d 502, 513 (9th Cir. 2018) as his primary authority. What Plaintiff fails to disclose however, is that *Acosta*, in turn, relied on an

6

earlier Ninth Circuit decision, *Hashimoto v. Bank of Haw.*, 999 F.2d 408, 411 (9th Cir. 1993),[4] a decision that was explicitly rejected by the Fourth Circuit in *King* which found *Hashimoto*'s "reasoning to be unpersuasive." *King*, 337 F.3d at 428. In rejecting the Ninth Circuit's reasoning that § 510 could be "fairly construed to protect a person in [plaintiff's] position if, in fact, she was fired because she was protesting a violation of law in connection with an ERISA plan", the court in *King* frankly concluded that "[w]e simply do not agree that the language of section 510 can be 'fairly construed' to extend to such a circumstance." *Id.* At the same time, the Fourth Circuit held that it was not "free to reject the most compelling interpretation of the statutory language for a 'fair' interpretation, even if we preferred as a matter of policy the result yielded by the broader interpretation." *Id.*

Yet it is precisely the Fourth Circuit's rejected approach in *King* that Plaintiff seeks to have the Court apply here by concluding that although Plaintiff's complaints never reached the level of testimony in an inquiry or proceeding as required by *King*, he was nevertheless exercising a generic right to "question" and "complain" about the Plan valuations. (Opp. at 8.) Plaintiff, however, offers no authority for his position other than *Hashimoto* and its Ninth Circuit progeny which have been discredited in this Circuit for 20 years.

Each of the other authorities put forward by Plaintiff (Opp. at 10), concerned the typical § 510 circumstance not present here, *i.e.*, termination of employment based on allegations of the employer's efforts to deny particular benefits to the specific plaintiff. Thus, for example, in *Diven v. Fairmont General Hosp., Inc.*, No. 11-27, 2011 WL 7431715 at *3 (N.D. W.Va. Nov. 21 2011),

---

[4] *See Acosta*, 901 F.3d at 513 (citing *Hashimoto*, and quoting *Hashimoto* for the proposition that "[i]f one is ... discharged for raising the problem [to the managers of an ERISA plan], the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown." *Hashimoto*, 999 F.2d at 411). That is the very proposition rejected by the Fourth Circuit in *King*. 337 F.3d at 428.

7

the court simply noted that § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." In Plaintiff's sole Fourth Circuit authority, *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231 (4th Cir. 1991), the court extended § 510 beyond terminations to prevent vesting to also include terminations intended to deny a plaintiff the "ability to accrue additional benefits." 933 F.2d at 231. Finally, in *Harris v. Johns Hopkins Health Sys. Corp.*, No. ELH-23-701, 2023 WL 3624733, at *8, the court held that a claim that plaintiff was constantly harassed in order to "force her to leave . . . *and to deprive her of her pension*" implicated §510 protections (emphasis in original).

In sum, the allegations that Plaintiff here was terminated for intramural complaints aired within Morris Inc. about the manner in which the Plan was conducted simply do not meet the standard enunciated by the Fourth Circuit in *King*.

## CONCLUSION

For the reasons stated in their opening Memorandum and herein, Defendants respectfully request that their Partial Motion to Dismiss be granted and that Plaintiff's representative claims be dismissed, along with his retaliation claim under 29 U.S.C. § 1140.

This the 2nd day of October, 2023.

/s/ Pressly M. Millen
Pressly M. Millen
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville St., Suite 1100
Raleigh, North Carolina 27601
(919) 755-2135
press.millen@wbd-us.com

*Counsel for Defendants*