IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:23-CV-00324

| | |
|---|---|
| BRYAN J. JOHNS, individually and on behalf of the Morris & Associates, Inc. Employee Stock Ownership Plan,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM F. MORRIS III, DORIS MORRIS, RANDY CLAPSADL, ROBERT F. WARWICK, BRUCE BOWERS, JOHN KIMBER, NED LEARY, ED LEONARD, JOHN SHELL and MORRIS & ASSOCIATES, INC., a North Carolina Corporation,<br><br>Defendants. | REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**[1]

The gravamen of Plaintiff's breach of fiduciary duty claims as asserted in his Complaint [D.E. 1], set out three basic allegations concerning (1) valuation of the ESOP [*id*. at ¶¶ 117-127], (2) Mr. Morris's compensation [*id*. at ¶¶ 128-135], and (3) employment and compensation of other members of the Morris family [*id*. at ¶¶ 136-146]. In other filings, Defendants have shown that Plaintiff has disclaimed certain aspects of his valuation complaint (*e.g.*, charitable contributions [*see* D.E. 67 at 3]), has failed to assert any valuation claim relating to Mr. Morris salary or compensation of other Morris family members, or otherwise provide substantive evidence of their

---

[1] This motion, including the related *Daubert* motions, raises multiple complex issues which cannot all be fully discussed in light of the page limitations in the Court's local rules. For that reason, Defendants respectfully suggest that a hearing on the pending motions could be useful the Court.

impropriety, and bases his claim regarding "excess cash" on a putative rule of thumb that cannot pass muster under *Daubert*. [*See* D.E. 58 & 83.]

In addition, as explained previously [D.E. 60, at 21-25], and more fully below, Plaintiff lacks standing and is barred by the statute of limitations since he, as an ESOP trustee, was knowledgeable concerning virtually every act – and complicit in several of those –about which he now complains. Similarly, Plaintiff's refashioned claim concerning allegedly "misappropriated" dividends is not borne out on the record. In the end, Plaintiff's protestations amount to nothing more than nearly twenty years of non-actionable pent-up grievances about the manner in which the Company has operated and achieved its success.

## ARGUMENT

**I.      Plaintiff Lacks Standing Because Any Injury He May Suffer Will Only Occur, If At All, At A Future Time Based On Some Future Valuation.**

In their Memorandum in Support of Summary Judgment [D.E. 60], Defendants contended (at 21-24) that Plaintiff was without standing due to the lack of any injury because he is not yet entitled to any distribution and any such (later) distribution would be based on a future annual valuation, *i.e.*, one that has not yet occurred. (*Id*. at 21.) Plaintiff, therefore, has suffered "[n]o concrete harm" and has "no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

In an effort to counter his standing deficiency, Plaintiff is seeking to conflate cases about alleged injuries arising from ERISA breaches of fiduciary duties concerning trustees' *selection of investment options*[2] – not at issue here – with injuries arising from trustees' alleged failures to

---

[2] This Court is well familiar with such cases which typically concern claims for breaches of fiduciary duties relating to selection and investigation of poor-performing or high-cost fund investments and/or failures to monitor recordkeeping fees. *See*, *e.g., Kendall v. Pharmaceutical Product Development, LLC*, No. 7:20-CV-71-D, 2021 WL 1231415, at *1-2 (E.D.N.C. Mar. 31, 2021).

conduct a proper annual valuation of the ESOP, an which injury can only arise upon a distribution to Plaintiff.

Thus, for example, Plaintiff's first-cited authority relating to standing [D.E. 70 ("Opp."), at 10], *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), concerned Wal-Mart's "Profit Sharing and 401(k) Plan" which offered participants "a menu of investment options," *id*. at 589, and was based on allegations that the trustees "failed adequately to evaluate the investment options in the Plan," specifically with regard to participants being "charge[d] excessive fees." *Id*. at 590. In those circumstances, Plaintiff's allegations "satisfied the requirements of Article III because he has alleged actual injury to his own Plan account." *Id*. at 592.

Not surprisingly, therefore, an ERISA plaintiff whose account is charged excessive fees (for recordkeeping or otherwise) or whose "menu of investment options" included inappropriate options which the plaintiff then chose, can establish standing. See, *e.g.*, *In re Mutual Funds Inv. Litig.*, 529 F.3d 207, 212 (4th Cir. 2008) (finding standing for former employees whose accounts "suffered a diminution in value" based on trustee's investments in "mutual funds that allowed improper and abusive market timing") (cited at Opp. 10).

Here, however, *all* of Plaintiffs' ERISA authorities regarding standing fit that inapplicable category.³ None concern an allegedly improperly low valuation of an ESOP invested solely in

---

³ *See LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 250-51 (2008) (finding standing for participant who alleged that misconduct impaired the value of plan assets in his individual account when he directed "certain changes to the investments in his individual account, but [the company] never carried out those directions") (cited at Opp. 12); *see also Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 129 (3d Cir. 2022) (breach based on "excessive recordkeeping and administrative fees, and employing a flawed process for selecting and monitoring the Plan's investment options, resulting in the selection of expensive investment options instead of readily-available lower-cost alternatives") (cited at Opp. 13); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294-95 (3d Cir. 2007) (finding "no dispute about Article III or prudential standing" in alleged claim that trustees offered a "stock fund as an investment option despite the fact that it was not (and was known not to be) a prudent investment") (cited at Opp. 10); *Reidt v. Frontier*, No. 3:18-

3

company stock for a time period prior to the given plaintiff's ability to receive some payout based on that valuation.[4]

The potential future harm claimed by Plaintiff here is not, as required, a harm which is "certainly impending." *Abdullah v. Paxton*, 65 F.4th 204, 209 (5th Cir. 2023). In short, this is not a case about investment options available to plan participants or fees charged to them, and *none* of Plaintiff's authorities establish his standing to assert a breach of fiduciary duty claim regarding a future valuation years before his entitlement ripens.

## II. Plaintiff Cannot Avoid the Statute of Limitations Based on Contentions that He Lacked "Actual Knowledge."

Defendants' argument regarding the statute of limitations [D.E. 60, at 24-25], asserted that Plaintiff had far-earlier actual knowledge of the issues he only much later complained about in

---

1538, 2024 WL 4252646 *3 (D. Conn. Sept. 20, 2024) (claim based on "defendants' failure to prudently monitor and diversify the Plan's investments") (cited at Opp. 13); *Davis v. Old Dominion Freight Line, Inc*., No. 1:22-990, 2023 WL 5751524, at *1, 5 (M.D.N.C. Sept. 6, 2023) (claim for fiduciary-duty breach based on the Plan's "pursuing high priced investments when the identical investments were available to the Plan at a fraction of the cost," but finding no standing for participant in a defined-contribution plan) (citied at Opp. 12); *In re Omnicom ERISA Litig*., No. 3:18-1538, 2022 WL 18957200, at *11 (S.D.N.Y. Aug. 11, 2022) (breach claim based on alleged charges of "excessive recordkeeping and investment management fees" and "target-date fund") (cited at Opp. 13); *Wachala v. Astellas US LLC*, No. 20-3882, 2022 WL 408108 (N.D. Ill. Feb. 10, 2022) (claim that investment manager "violated its fiduciary duties by investing in and retaining five [of its] collective investment trusts") (cited at Opp. 13); ); *Reetz v. Lowe's Companies, Inc*., No. 5:18-75, 2019 WL 4233616 (W.D.N.C. Sept. 6, 2019) (finding standing for claim that trustee's "remov[ed] certain investment options from [defendant's] 401(k) retirement plan" and replaced them with a deficient "growth fund") (cited at Opp. 12); *McMaken on behalf of Chemonics Int'l, Inc. Emp. Stock Ownership Plan v. GreatBanc Tr. Co.*, No. 17-4983, 2019 WL 1468157, at *10 (N.D. Ill. Apr. 3, 2019) (claim based on prohibited transaction by Plan) (cited at Opp. 13).

[4] The closest analog authority cited by Plaintiff, *Swain v. Wilmington Tr., N.A.*, No. 17-71, 2018 WL 934598, at *1 (D. Del. Feb. 16, 2018) (cited at Opp. 13), is of no help to him since it concerned plaintiffs who purchased *overvalued* shares valued at the time of purchase at an $98 million and, only two weeks later, revalued at just $39 million. The court held only that standing was established by the diminution in actual value of their accounts. *Id*. at *4. Here, Plaintiff has suffered no diminution in value and, at least until he is paid out in the future, will have suffered no injury in fact.

4

2023.  Defendants also cited as authority two cases, one from the Fourth Circuit[5] and one from this Court,[6] each of which stands for the proposition that plaintiffs with even less knowledge than Plaintiff here were charged with sufficient actual knowledge to apply the bar of the statute of limitations to their claims.  Plaintiff nevertheless contends that he was lacking in actual knowledge. (Opp. at 15-17.)

Plaintiff's ostensible contrary authorities actually prove Defendants' point.  Thus, in *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1176-77 (3d Cir. 1992) (cited at Opp. 16), the court considered the "actual notice" requirement under 29 U.S.C. § 1113 with respect to rank-and-file employees of the subject corporation, not for a long-time ESOP trustee like Plaintiff here.  Similarly, the plaintiff in *Ruffin v. New England Life Ins. Co.*, No. 7:03-35, 2008 WL 11429993, at *5 (E.D.N.C. Dec. 1, 2008), served in no fiduciary capacity himself.  While *Gluck* noted that actual notice "could include necessary opinions of experts," 960 F.2d at 1177, and Plaintiff contends that he "is not an expert in business valuation" (Opp. at 17), Plaintiff cannot escape the fact that, without informing any of his fellow trustees or Company management (before or after), he *did* consult an expert "to get an outside opinion" of "when does working capital become excess cash" (Johns Tr. 221:16-22),[7] because he "was concerned that the valuation was under value in cash." (*Id*. at 239:17-21.)  This is not a case, in other words, of an employee who may or may not have seen a given disclosure. *See Intel Corp. Investment Policy Comm. v. Sulyma*, 589 U.S. 178, 189 (2020).

Instead, the expert told Plaintiff point blank on September 11, 2019, that "there is a substantial amount of excess cash that needs to be added to value." [D.E. 63-19.]  In other words,

---

[5] *Browning v. Tiger's Eye Benefits Consulting*, 313 Fed. App'x 656, 662 (4th Cir. 2009).
[6] *Allen v. MetLife*, No. 5:21-CV-174-D, 2022 WL 97178, at *6 (E.D.N.C. Jan. 10, 2022).
[7] References to the transcript of Plaintiff's deposition transcript ("Johns Tr.") are found at D.E. 63-4.

Plaintiff's expert identified precisely the basis of Plaintiff's first claim for relief. Issues regarding employment of Morris family members and their compensation were also known to Plaintiff. Thus, any contention that Plaintiff was without actual knowledge is not well-taken on this record.[8]

### III. Plaintiff Cannot Establish Any Breach of Fiduciary Duty.

#### A. Plaintiff's Claims Concerning Improper Valuation and "Misappropriated Dividends" are Unsupported on the Record.

As discussed in Defendants' *Daubert* motion concerning Plaintiff's appraisal expert, Brown, Plaintiff cannot support his contention regarding excess cash [*see* D.E. 58, at 7-15; D.E. 83, at 3-9], let alone his claim that the ESOP Trustees breached any fiduciary duty in connection with the treatment of excess cash in the valuation.

In addition, Plaintiff's contentions concerning dividends are emblematic of his tendency to engage in second-guessing of management in hyperbolic terms that ultimately evaporate. Thus, in his Complaint, Plaintiff's sole contention regarding dividends was that Mr. Morris "managed the stock dividends to benefit him and his family at the expense of the ESOP." [D.E. 1, at ¶ 111.] Specifically, Plaintiff alleged that Mr. Morris "directed changes to the dividend program, which allowed Morris family members, as the minority shareholders, to receive cash dividends while the ESOP merely used the dividends to meet annual share purchase obligations." (*Id.*)

---

[8] Plaintiff, tellingly, seeks to direct the Court away from his own long-standing conduct as a Trustee by hiding behind technical arguments concerning unclean hands and *in pari delicto*. (Opp. 17-20). Plaintiff cannot, for example, claim to be prejudiced in having to explain his own complicity – or, at least, acquiescence – in virtually every aspect of the performance of the ESOP about which he now complains. [*See* D.E. 60, at 25-27.] Plaintiff cannot seriously contend that he would be prejudiced by consideration of his own conduct or the conformance of that evidence to the pleadings. *See, e.g., R.J. Reynolds Tobacco Co. Southern Ry. Co.*, 110 F.R.D. 95, 98-99 (M.D.N.C. 1986) (finding no prejudice to defendant from late amendment adding affirmative defense).

In his Declaration opposing summary judgment [D.E. 68], Plaintiff spelled out his alleged "concern": "[Mr.] Morris and the Board had moved the company's pre-tax ESOP buy-back obligation to an after-tax dividend that hurt the shareholders and the company while benefiting Bill Morris and his family." (*Id*. at ¶ 18.) Plaintiff, in his "additional facts" [D.E. 71], noted that the Morris Board approved its first dividend in October 2021 (PAF 7), and that rather than being paid directly to ESOP participants (PAF 87), the "ESOP dividends were used to meet the Company's obligation to redeem shares of retirees and former participants instead of being paid directly to participants." (PAF 88.)

In his Opposition to summary judgment, however, Plaintiff seeks to transform the otherwise banal issue concerning whether payments went to the ESOP as opposed to directly to its participants into something far more sinister, claiming that the "Morris family also misappropriated the Plan's (and participants') dividends on Morris Stock, using those dividends to satisfy the Company's stock redemption liabilities while at the same time pocketing the full value of the dividends paid to them as minority shareholders." [D.E. 70, at 2.] Plaintiff also claims he was "harmed because he has not received the dividends from the Morris stock in his Plan account." [*Id*. at 11.]

Those heated contentions concerning misappropriation are simply not borne out on the record. As an initial matter, and as Plaintiff well knows, he "received a dividend in 2022 allocated to [his] account in the amount of $8,033.18," as reflected in his 2022 account statement. (Johns Tr. 353:10-20.) He received a similar account statement in 2021 reflecting a dividend payment of $7,043.55. (*See* Declaration of Sarah Clapsadl, sworn to January 14, 2025 ("S. Clapsadl Decl.," filed herewith), at Ex. 1.)

7

As explained in Ms. Clapsadl's Declaration, beginning in 2021 after the ESOP paid off its loan from the Company, Morris & Associates began paying a dividend. (S. Clapsadl Decl. at ¶ 3.) That dividend was paid *pro rata* to the Company's shareholders, both individual shareholders and the ESOP, at the approximately 25-75% ownership ratio between those two. (*Id*. at ¶ 4.) Thus, for example, in 2021, the individual shareholders received a cash dividend totaling $48,484.00 from the Company, while the ESOP received $146,268.00 in cash from the Company representing its share of the dividend. (*Id*. at ¶ 5.) (That amount was then used to pay a portion of the ESOP's repurchase obligation – totaling $1,623,462.16 – to retired beneficiaries (with the balance of those obligations, $1,477,194.16, paid by the Company to the ESOP)). (*Id*. at ¶ 6) The same process was followed again in 2022 and 2023. (*Id*.)

As a result of those dividend payments, each ESOP participant, including Plaintiff and Ms. Clapsadl herself, received their *pro rata* share of the dividend paid by the Company to the ESOP as an allocation to their accounts and as reflected in their account statements. (S. Clapsadl Decl. at ¶ 7 & Exs. 1-4.) Those dividend amounts were subsequently used to acquire additional Company stock for the individual participants – including Plaintiff and Ms. Clapsadl – from the redeemed shares of retired ESOP beneficiaries. (*Id*. at 9.)

While the dividend amounts can be paid in cash to participants, such cash payments would result in their immediate taxation as income to those participants. (S. Clapsadl Decl. at ¶ 10.) However, because the ESOP is a tax-exempt entity, it pays no taxes on the dividends it receives and any tax for the participants is thereby deferred until later distribution. (*Id*.) Of the amounts contributed by the Company to the ESOP to fund distributions to beneficiaries, the amount representing dividends – $146,268.00 (2021) and $164,551.50 (2022) – represents post-tax dollars

to the Company while the balance – $1,477,194.16 (in 2021) – is pre-tax up to a pre-determined limit. (*Id*. at ¶ 10.)[9]

In sum, any claim that dividends were "misappropriated," as Plaintiff now contends, is entirely unfounded since all dividends paid to the ESOP were allocated to the accounts of the individual participants and ultimately used to purchase shares on their behalf. Any contention that use of dividends to fund payments to beneficiaries somehow constitutes a breach of fiduciary duty because of their post-tax status is similarly unsupportable.

> **B. Plaintiff's Contentions in his Counts II & III Regarding Mr. Morris's Compensation and the Hiring and Compensation of Morris Family Members are Unsupported.**

Plaintiff makes no serious effort to support his claims – Counts II & III – that Mr. Morris's compensation, whose terms were set respectively 21 and 14 years ago [*see* D.E. 60 at 29], represent a breach of fiduciary duty on the part of the ESOP Trustees. Likewise, there is no record support that the Morris family members employed by the Company are either unqualified or overcompensated. [*See id*. at 29.] As further confirmation that those claims play no role here, neither issue figures in Brown's "damages" calculations. [*See* D.E. 57-1.] Brown, thus, makes no effort to "normalize" compensation for Mr. Morris or any Morris family member to account for any amounts that they were allegedly overpaid. And there is no evidence that they were, in fact, overpaid.[10]

---

[9] In 2022 (reflecting Plan Year 2021), the $164,55.50 dividend paid to the ESOP was sufficient to cover the ESOP's repurchase obligations for that year. (S. Clapsadl Decl. ¶ 6.)

[10] Plaintiff's contentions that he might be entitled, despite lacking any claim for damages to the ESOP or its participants, to some sort of injunctive relief (*see* Opp. at 23), including directing who is employed by the Company or how much those employees are paid is ill-founded. Plaintiff's evidence provides no basis for the Court to micro-manage the operations of the concededly successful Company.

9

## VI. Plaintiff Cannot Establish his Claim Under ERISA Section 510.

Under the pertinent language of § 510 of ERISA, 29 U.S.C. § 1140, pursuant to which Plaintiff seeks relief, it is unlawful to discharge an ESOP participant for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." As the Fourth Circuit made clear in *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231 (4th Cir.1991), the "primary focus of section 510 is to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested [benefits]." *Id*. at 237 (brackets in original, internal quotation omitted). For that reason, in order "to establish a claim under Section 510, a plaintiff must prove that the employer took the offending action with the specific intent to interfere with the plaintiff's plan benefits." *Blair v. Young Philllps Corp.*, 235 F. Supp. 2d 465, 473 (M.D.N.C. 2002) (citing *Henson v. Liggett Group, Inc.,* 61 F.3d 270, 277–78 (4th Cir.1995)).

Plaintiff, however, makes no claim that his termination from the Company will in any way interfere with or impede him from attaining any rights under the ESOP. Indeed, Plaintiff recognizes that his entitlement under the Plan "could come as early as next year" with no contention that his termination would or could affect that entitlement. (*See* Opp. at 15.) Thus, Plaintiff's § 510 claim fails because he cannot link his termination to any interference with his entitlement to benefits under the Morris ESOP.

## CONCLUSION

For the reasons stated herein and in their Opening Memorandum, Defendants respectfully request that their Motion for Summary Judgment be granted.

This the 21st day of January, 2025.

/s/ Pressly M. Millen
Pressly M. Millen
WOMBLE BOND DICKINSON (US) LLP

10

Case 5:23-cv-00324-D-RJ    Document 85    Filed 01/21/25    Page 10 of 11

555 Fayetteville St., Suite 1100
Raleigh, North Carolina 27601
(919) 755-2135
press.millen@wbd-us.com

*Counsel for Defendants*